UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------X
JIAN HONG LIN,

                Petitioner,

                **MEMORANDUM & ORDER**

    -against-

                01-CV-3986

HANS WALKER,
                Respondent.
------------------------------------------------X
DEARIE, District Judge.

       In a Report and Recommendation dated July 28, 2004, Magistrate Judge Lois Bloom recommended that this Court deny petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, represented by counsel, filed objections. In addition, respondent filed an objection to Judge Bloom's recommendation that a certificate of appealability should be granted. The Court has considered the petition and the objections de novo.

       Petitioner and his two co-defendant's, Qi Zhong Lin and Qiang Zheng, were convicted of kidnaping, rape, sodomy, sexual abuse and assault in connection with their abduction of a woman in Queens. The victim was held hostage in an apartment for fifteen days. Although she was blindfolded for most of this time, on two occasions she had the opportunity to observe petitioner. She identified him in a line-up and testified at trial that he had raped her only once on the night after she was taken. She also testified that co-defendant Lin had raped her almost every day. The victim determined which of her captors had raped her by distinguishing their voices.

       As set forth in detail in the Report and Recommendation, the prosecution represented prior to trial that no semen evidence had been collected from the victim. In accordance with the defense theory that petitioner had been misidentified, petitioner's counsel argued in his opening statement that there was no physical evidence tying petitioner to the crime. However, after two

days of testimony, the prosecution learned that there was in fact semen evidence in the rape kit. The prosecution immediately informed defense counsel. The court denied motions for a mistrial and preclusion of the evidence.

Three weeks later, the prosecution called the chemist who had examined the rape kit slides. She testified that it is "normally" only possible to collect a sperm sample from a body cavity within three days of its being deposited. (Tr. 1610-12.) She also testified that DNA testing could be performed on the semen evidence but that such testing had not been requested. In the jury's presence, co-defendant Lin's counsel requested DNA testing. One week later, the DNA report was submitted. Marie Samples of the Medical Examiner's Office testified, based on the DNA results, that it was "possible" that petitioner "contributed to the vaginal swab." (Tr. 1827.)

After petitioner commenced this action, on December 17, 2002, the semen sample was retested (the "DNA re-analysis"), and petitioner was eliminated as a possible source. The results were promptly disclosed. Petitioner unsuccessfully moved in state court to vacate the conviction on the grounds of newly discovered evidence.

Petitioner contends that the erroneously admitted semen and DNA evidence deprived him of a fair trial. He objects to Magistrate Judge Bloom's conclusion to the contrary, arguing that because "reasonable doubt existed based on the lack of physical evidence, only preclusion of the surprise semen evidence would have preserved his right to a fair trial." (Petr.'s Objections 7, Sept. 2, 2004.) Petitioner further argues that the prejudice from the erroneously admitted semen evidence was amplified by the admission of unreliable "derivative DNA evidence which had not been tested in accordance with the Medical Examiner's own guidelines." (Id.) The Court agrees with Magistrate Judge Bloom's conclusion that, even assuming the evidence was erroneously

admitted, viewed objectively in light of the entire record before the jury, it was not "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985). Neither the semen evidence nor the DNA evidence was "crucial, critical, highly significant." Id. (quoting Nettles v. Wainwright, 677 F.2d 410, 414-15 (5th Cir.1982)).

As stated in the Report and Recommendation, "[t]he semen evidence did not tie petitioner to the crime, and therefore did not undercut the mistaken identification theory on which petitioner principally relied." (Report and Recommendation 40.) Indeed, the testimony at trial clearly indicated that the semen could not have been petitioner's. The victim testified that petitioner raped her only one time at the beginning of her fifteen-day ordeal (Tr. 1072-73), and, significantly, the chemist testified that the sperm collected in the rape kit was at most three days old. (Tr. 1610-12.)

The weak DNA evidence did not undercut the defense theory to any meaningful degree. The vaginal swab contained a "mixture" of DNA including a marker common to the victim, co-defendant Lin, and petitioner. Thus, it was "possible that Jian Hong Lin contributed to the vaginal swab." With respect to co-defendant Lin, the DNA found on the vaginal swab essentially matched. Statistically, only between 1 in 6,200 and 1 in 620,000 Asians would be expected to have the same DNA result. (Tr. 1830.) In contrast, as many as 1 in 4 to 1 in 400 Asians would be expected have the DNA marker found on the swab and in petitioner's DNA. (Tr. 1886.) Viewed in light of the testimony of the victim and the chemist eliminating any chance that petitioner's sperm would have been recovered in the rape kit, the weak DNA evidence was not sufficiently material to provide the basis for conviction or remove reasonable

3

doubt that otherwise would have existed.

Petitioner also objects to Magistrate Judge Bloom's separate consideration of the semen evidence and the DNA re-analysis in determining whether a <u>Brady</u> violation occurred. The Court agrees with Judge Bloom's determinations that the semen evidence itself was not exculpatory and that the DNA re-analysis, even assuming it was exculpatory, was not suppressed. Moreover, as respondent points out (Respt.'s Objections 3, Sept. 22, 2004), even the DNA re-analysis is not material under <u>Brady</u>. <u>See</u> <u>Kyles v. Whitley</u>, 514 U.S. 419, 433-34 (1995) ("[F]avorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"(quoting <u>United States v. Bagley</u>, 473 U.S. 667, 682, 685 (1985))). As petitioner's counsel argued in closing, the weak DNA evidence at trial "practically excluded" petitioner (Tr. 2058), and as respondent argued, the "People's position throughout th[e] entire case was that this case was not a case where DNA was necessary." (Tr. 2196.) There is no reasonable probability that had the jury known of the results of the re-analysis, petitioner would have been acquitted. Accordingly, no <u>Brady</u> violation occurred.

The Court agrees with Magistrate Judge Bloom's conclusion that there is no merit to petitioner's claim that the trial court violated due process by failing to question the jurors about their discussion of the meaning of "snakehead" prior to deliberations. The Court notes that co-defendant Zheng raised this same claim on habeas before United States District Judge Jack B. Weinstein. Judge Weinstein concluded that the claim was meritless. <u>Zheng v. Greiner</u>, No. 00 - 7503 (E.D.N.Y. Oct. 22, 2004).

For the reasons detailed in Magistrate Judge Bloom's thorough Report and

Recommendation, petitioner's application for a writ of habeas corpus is denied, and the petition is dismissed. However, the Court declines to follow Magistrate Judge Bloom's recommendation to grant a certificate of appealability. Under Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), "to obtain a [certificate of appealability] under 28 U.S.C. § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing . . . that the issues presented were adequate to deserve encouragement to proceed further." (internal quotations and citation omitted); see also Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000). In light of the foregoing, a certificate of appealability shall not issue. In addition, the Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962). The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       February 10, 2006

s/ Judge Raymond J. Dearie
_____
RAYMOND J. DEARIE
United States District Judge

5